UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR BRIDGES,

    Petitioner,                                CASE NO. 09-CV-12139
                                                      HON. PATRICK J. DUGGAN

v.

JEFFREY WOODS,

    Respondent,
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

      This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Petitioner Arthur Bridges, a Michigan Department of Corrections prisoner, is currently housed at the Carson City Correctional Facility in Carson City, Michigan. He is serving a sentence of seventy-six months to twenty-five years in connection with his convictions for delivery of less than 50 grams of cocaine pursuant to Michigan Compiled Laws § 333.7401(2)(a)(iv) and being a fourth habitual offender under Michigan Compiled Laws § 769.12.  Petitioner's application, filed *pro se*, challenges these convictions on the basis of constitutional rights deprivation.  Specifically, Petitioner alleges constitutional errors relating to (1) his right to self-representation pursuant to the Sixth Amendment, (2) the admission of recorded statements made to a confidential informant pursuant to the Fourth and Fourteenth Amendments, (3) the probable cause requirement embodied in the Fourth Amendment, and (4) the sufficiency of the evidence

presented at his trial. For the reasons stated herein, the petition for writ of habeas corpus is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was convicted of the above offenses following a jury trial in the Saginaw County Circuit Court. This Court recites verbatim the facts relied upon by the Michigan Court of Appeals in denying Petitioner's appeal on direct review:

> On August 1, 2006, Sergeant Gregory Potts of the Bay City Police Department engaged in a "buy/bust" investigation of defendant with the help of Saginaw's Police Department and a confidential informant.
>
> The confidential informant was given a recording device in order to record her telephone and face-to-face conversation with defendant. She made a call to defendant to set up a meeting. The confidential informant was searched and provided with marked $ 50 bills to use in the drug purchase. Potts drove the confidential informant to the meeting location designated by defendant. The confidential informant approached defendant and entered defendant's vehicle. Defendant told the confidential informant to throw the money on the floor and then gave her a package of plastic that she believed to contain cocaine; the contents of which were later confirmed to be cocaine. The confidential informant exited defendant's vehicle and returned to Potts's unmarked vehicle. Defendant began to exit the parking lot, at which time Potts notified other officers that the purchase had been completed. Multiple officers in police vests arrived on the scene and ordered defendant to stop. Defendant drove his vehicle around the officers and exited the parking lot. Officers pursued defendant in unmarked cars until marked police cars arrived in the area. Defendant was pulled over and arrested shortly thereafter.
>
> A scale and a cellular phone were seized from defendant's vehicle; the phone was identified as the phone the confidential informant called. The marked $ 50 bills were not found on defendant or along his traveled path. The pursuing officers did not witness defendant throw anything from his windows; however, while in pursuit, the officers had lost sight of defendant's vehicle for a short period of time.
>
> Defendant's trial began on March 13, 2007. Defense counsel raised numerous motions alleging error on defendant's behalf. Defendant

> repeatedly objected to the descriptions of those issues. The court instructed defendant to stop interrupting and making faces. Defendant then requested an interlocutory appeal, and the court once again instructed defendant to stop talking. Defendant stated that he wanted a "fair" trial, at which time the court warned if he interrupted one more time, defendant would be gagged. The court then denied all motions raised by defendant as either being frivolous or untimely and only for the purpose of delay.
>
> Defendant then requested his Sixth Amendment right to self-representation. The court initially denied defendant's request, but then proceeded with inquiry regarding defendant's knowledge of self-representation. Defendant ignored the court's questions and stated that he was confused. Defendant then asked the court to state its jurisdiction. The court removed the defendant and placed him in holding. Shortly thereafter, defendant returned to the courtroom to proceed with the court's questioning. Defendant objected to the adjournment of the proceeding and objected to the challenge of accuracy and validity of his habitual offender status. At this point, the court denied defendant's request for self-representation. The court felt that defendant did not make an unequivocal waiver and would likely disrupt the proceedings and make the administration of justice difficult, if not impossible to proceed in the case. Defendant objected to the court's denial, requesting to no longer be present in the court and left, telling the court that it was "biased, prejudiced and unfair."

*People v. Bridges,* No. 277758, * 1-2 (Mich. Ct. App. Nov. 13, 2008). This iteration of the facts is presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009). Petitioner has not rebutted this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

In 2009, after his conviction was affirmed on appeal, *People v. Bridges,* No. 277758, *lv. den.* 483 Mich. 978, 764 N.W.2d 261 (2009), Petitioner filed a petition for writ of habeas corpus with this Court. This Court held the petition in abeyance and administratively closed the case so Petitioner could return to the state courts to exhaust an additional claim.

3

Petitioner filed a motion for relief from judgment with the trial court, which was denied. *People v. Bridges,* No. 06-027887-FH (Saginaw Cir. Ct. July 21, 2010), *reconsid. den.*, No. 06-027887-FH (Saginaw Cir. Ct. Feb. 17, 2011). The Michigan appellate courts denied Petitioner leave to appeal. *People v. Bridges,* No. 302805 (Mich. Ct. App. Sept. 6, 2011), *lv. den.* 490 Mich. 972, 806 N.W.2d 323 (2011).

On April 11, 2012, upon motion and after a demonstration that Petitioner complied with the terms of the Court's Stay and Abeyance Order, this Court reopened Petitioner's case and permitted Petitioner to file an amended habeas petition. This petitioner seeks habeas relief on the following grounds:

1. Petitioner was denied his constitutional right to represent himself at trial despite satisfying all of the requirements for effective waiver of counsel.

2. The Fourth and Fourteenth Amendments freedom from illegal searches and seizures. Due process requires Petitioner's conviction to be vacated where the state used recording obtained unlawfully pursuant to Title II of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520.

3. The police lacked probable cause to conduct a search and seizure pursuant to the Fourth Amendment.

4. There was insufficient evidence to sustain Petitioner's conviction under Michigan Compiled Laws § 333.7401(2)(a)(iv), which prohibits the delivery of less than 50 grams of cocaine.

## II.     STANDARD OF REVIEW

Petitioner's habeas petition is subject to review pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"). Pub. L. No. 104-132, 110 Stat. 1214. In order to grant relief, this Court must conclude that the Michigan court's

decision "with respect to any claim that was adjudicated on the merits in State court proceedings" was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[]" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court has fleshed out the meanings of the two clauses contained in 28 U.S.C. § 2254(d)(1). "A state-court decision is contrary to clearly established federal law if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009) (quoting *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000) (alterations in original) (internal quotation marks omitted)). Alternatively, "[i]f the state court identifies the correct governing legal principle . . . , habeas relief is available under the unreasonable application clause if the state court unreasonably applies that principle to the facts of the prisoner's case or unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Akins v. Easterling*, 648 F.3d 380, 385 (6th Cir. 2011) (internal quotation marks and alterations omitted); *Williams*, 529 U.S. at 409, 120 S. Ct. at 1521. A federal court may not find a state court's application of Supreme Court precedent unreasonable if it is merely "incorrect or erroneous. [Rather, t]he state court's application must have been

5

'objectively unreasonable.'" *See, e.g.*, *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S. Ct. 2527, 2535 (2003) (citations omitted).

As suggested by the above-quoted language, AEDPA's standard of review is "difficult to meet . . . [as it is a] highly deferential standard." *Cullen v. Pinholster*, 563 U.S. __, 131 S. Ct. 1388, 1398 (2011). In fact, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 2150 (2004) (per curiam)). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332 n.5, 99 S. Ct. 2781, 2796 n.5 (1979) (Stevens, J., concurring in judgment)).

### III.  ANALYSIS

#### A.  Petitioner's Self-Representation Claim

Petitioner's first claim is that the trial court denied him his constitutional right to self-representation by denying his request to represent himself at trial. However, Petitioner fails to establish that the state court denial of this claim was contrary to, or an unreasonable application of, established Supreme Court precedent.

"[T]he Sixth Amendment right to the assistance of counsel implicitly embodies a 'correlative right to dispense with a lawyer's help.'" *Faretta v. California*, 422 U.S. 806, 814, 95 S. Ct. 2525, 2530 (1975) (quotation omitted). Although not within the text of the

Sixth Amendment itself, the Supreme Court has determined that the Sixth Amendment affords criminal defendants a constitutional right to conduct their own defense at trial. *Id.* at 818, 95 S. Ct. at 2532 ("The right of self-representation finds support in the structure of the Sixth Amendment, as well as in the English and colonial jurisprudence from which the Amendment emerged."). This right, which is "basic to our adversary system of justice," applies to defendants in state criminal courts as it is part of "the due process of law that is guaranteed by the Fourteenth Amendment." *Id.* (citations and internal quotation marks omitted). In order to take advantage of the right to represent oneself, "the accused must knowingly and intelligently" elect to do so. *Id.* at 835, 95 S. Ct. at 2451 (citations and internal quotation marks omitted). Moreover, a defendant's request for self-representation must be made "clearly and unequivocally[.]" *Id.*; *see also United States v. Martin,* 25 F.3d 293, 295 (6th Cir. 1994) ("To assert the right of self-representation, a defendant must do so unequivocally."). A defendant representing himself should understand that "[t]he right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with the relevant rules of procedural and substantive law." *Id.* at 834 n.46, 95 S. Ct. at 2541 n.46.

The state trial court denied Petitioner's request for self-representation after finding that the waiver was not unequivocal and after expressing concern about the disruptions caused by the defendant. (3/13/2007 Tr. at 31:1-8.) On appeal, the Michigan Court of Appeals reasonably concluded that Petitioner's request for self-representation was not

unequivocal because he repeatedly informed the trial court that he intended to rely on his appointed counsel to assist him.[1] *Bridges,* No. 277758, at *2-4.

A defendant in a criminal case does not have a constitutional right to hybrid representation. *United States v. Cromer*, 389 F.3d 662, 681 n.12 (6th Cir. 2004); *United States v. Green*, 388 F.3d 918, 922 (6th Cir. 2004); *Wilson v. Hurt,* 29 F. App'x 324, 327 (6th Cir. 2002) ("If [the petitioner] had insisted upon questioning only some of the witnesses on his own, or leaving his attorney to perform some of the "core functions" of counsel, we are certain that the trial court's denial of his request [for self-representation] would have raised no constitutional problem."). In *McKaskle v. Wiggins*, the Supreme Court observed that "*Faretta* does not require a trial judge to permit 'hybrid' representation" and that "[a] defendant does not have a constitutional right to choreograph special appearances by counsel." 465 U.S. 168, 183, 104 S. Ct. 944, 953 (1984). Petitioner's requests to represent himself along with the assistance of counsel cannot be considered a clear and unequivocal invocation of his right to represent himself. "Because the assertion of the right to self-representation necessarily involves a waiver of the constitutional right to counsel, and given the importance of the right to counsel, we think the wisest course is to require a clear and unequivocal assertion of a defendant's right to self-representation before his right to counsel may be deemed waived." *Cromer,*

---

[1] A review of the trial court transcript corroborates this finding. (*See* 3/13/2007 Tr. at 22:10-12 ("I'd like for Mr. White to sit as co-counsel. I would like to represent myself in this matter."), 28:11-14 (defendant explains that he wants his appointed counsel's assistance at trial); 29:22-23 (defendant indicates that appointed counsel will assist with rules of procedure and evidence); 30:1-2 (appointed counsel will assist with jury selection); 30:14-15 (appointed counsel "Mr. White will do his best").)

389 F.3d at 682-83. Indeed, "requiring an articulate and unmistakable demand of the right to proceed *pro se* decreases the danger of a savvy defendant manipulating these two mutually exclusive rights to put the [trial] court in a Catch-22." *Id.*

Moreover, it was clear from several of the exchanges between the judge and Petitioner that Petitioner did not understand the law or criminal procedures. When the trial judge attempted to ascertain whether Petitioner was actually requesting to represent himself, Petitioner responded by questioning the court's jurisdiction to hear the case, observing that jurisdiction to try a case can arise either under common law or "under the contract under criminal aspects of a colorful admiralty jurisdiction[.]" (3/13/2007 Tr. at 23:4-8.) Petitioner asked the judge at one point to explain the charges against him. (*Id.* at 28:25-29:1.) Petitioner also indicated that he could not hear the judge, that he was confused, and that he intended to rely on appointed counsel to assist him. (*See, e.g.*, *id.* at 22:6, 22:21-22, 28:11-14, 29:22-23.)

When faced with a defendant's request to represent himself, a trial court must determine whether the defendant's decision to proceed *pro se* is knowing, intelligent, and voluntary. *Faretta,* 422 U.S. at 835, 95 S. Ct. at 2541. Although "technical legal knowledge, as such, [is] not relevant to an assessment of [a defendant's] knowing exercise of the right to defend himself," *Faretta*, 422 at 836, 95 S. Ct. at 2541, it is clear from Petitioner's comments and behavior at trial that he lacked the ability to effectively conduct his own defense. Because Petitioner "neither exhibited a genuine inclination to conduct his own defense nor manifested an ability to do so[,]" the Michigan Court of Appeals did not commit constitutional error when it affirmed the state trial court's

9

decision denying Petitioner's request for self-representation. *Robards v. Rees*, 789 F.2d 379, 384 (6th Cir. 1986).

Moreover, as the Michigan Court of Appeals noted in rejecting Petitioner's claim, Petitioner was disruptive. *Bridges,* No. 277758, at *4. Although a criminal defendant has a right to conduct his own defense, he must be "able and willing to abide by rules of procedure and courtroom protocol." *McKaskle*, 465 U.S. at 173, 104 S. Ct. at 948. Indeed, a "trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta,* 422 U.S. at 834 n.46, 95 S. Ct. at 2541 n.46 (citation omitted). Further, "the right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *Id.*

The record evidence supports a finding that Petitioner was disruptive. Petitioner interrupted the trial judge several times throughout the course of the *Faretta* colloquy and made faces at him. (3/13/2007 Tr. at 22:25-23:2, 24:3-25:3.) When Petitioner began arguing with the trial judge over whether he had jurisdiction to try the case, Petitioner became so disruptive, that the judge ordered that he be temporarily removed from the courtroom. (*Id.* at 23:17-23.) After Petitioner had been removed from the courtroom, the judge noted that Petitioner had been disruptive and had made faces at him. (*Id.* at 24:3-25:3.) The judge asked the prosecutor and defense counsel whether Petitioner had been disruptive and they concurred with the judge's assessment concerning Petitioner's behavior. (*Id.* at 25:16-18, 25:20.) The judge indicated that in his ten years on the bench, Petitioner's conduct was the worst that he had seen. (*Id.* at 25:21-24.) When the judge

later rejected Petitioner's request to represent himself, Petitioner accused the judge of being biased, prejudiced, and unfair before leaving the courtroom. (*Id.* at 32:17-18, 33:13-16.)

Lastly, "[e]ven where the right to self-representation is clearly invoked,[2] it must be done so in a timely manner, and courts will balance any such assertion against considerations of judicial delay." *Martin,* 25 F.3d at 295-96 (footnote in original). In *Robards v. Rees*, the Sixth Circuit ruled that the state trial court did not err in denying the habeas petitioner's motion to represent himself when the motion was not made until the first day of trial and after the clerk had called the roll of jurors. 789 F.2d 379, 383 (6th Cir. 1986). The Sixth Circuit concluded that the petitioner's request for self-representation, if honored by the trial court, "would have impermissibly delayed the commencement of the trial." *Id.* at 384.

The instant case is similar to *Robards*, as Petitioner did not invoke his right to self-representation until the trial was about to commence. In fact, Petitioner requested to represent himself after the judge asked that the prospective jurors be brought into the courtroom. (3/13/2007 Tr. at 21:9-13.) The Michigan Court of Appeals noted, "Defendant did not raise his request to represent himself until after asserting numerous frivolous defenses and engaging in frequent interruptions of the court and his own counsel." *Bridges, Bridges,* No. 277758, at *3.

---

[2] In *Faretta*, the Court specifically noted that the defendant had requested that he be allowed to represent himself "well before the date of trial." 422 U.S. at 807, 95 S. Ct. at 2527.

11

In light of the record supporting the trial court's denial of Petitioner's request to represent himself, Petitioner is unable to satisfy the standard for relief required by AEDPA. Accordingly, Petitioner is not entitled to habeas relief of this claim.

**B.      Petitioner's Claim Regarding Admission of Recorded Statements**

Petitioner contends that the state courts erred by allowing the admission of a recorded conversation between Petitioner and confidential informant Kim LaRoche because the police did not seek or obtain a warrant to record the conversation. The admission of this evidence, Petitioner argues, violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.* Because statutory violations do not provide grounds for habeas relief, Petitioner is not entitled to relief on this ground.

To the extent Petitioner attempts to assert a Fourth Amendment claim based on the admission of the recorded conversation, the claim lacks merit. The Michigan Court of Appeals determined that the warrantless participant monitoring at issue did not violate Petitioner's rights. *Bridges,* No. 277758, at *4. The informant consented to the recording of the conversation and the Fourth Amendment does not prohibit evidence obtained in such a manner. *United States v. White*, 401 U.S. 745, 752-53, 91 S. Ct. 1122, 1126-27 (1971). As such, Petitioner is not entitled to habeas relief on this claim.

**C.      Petitioner's Probable Cause Claim**

In his third claim, Petitioner claims that the police lacked probable cause to stop and search his vehicle. This claim is not cognizable in federal habeas proceedings.

In *Stone v. Powell*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494-95, 96 S. Ct. 3037, 3052-53 (1976) (footnotes omitted); *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000). For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the Petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003), *rev'd on other grds*, 606 F.3d 867 (6th Cir. 2010).

Petitioner raised his probable cause claim and the previous claim regarding the admission of the recorded conversation with the informant before the trial court and the Michigan appellate courts. Petitioner filed a motion to suppress the evidence seized from his vehicle, which was denied. (3/13/2007 Tr. at 17:19-23.) Trial counsel later objected to the admission of the recording between the confidential informant and Petitioner, on the ground that it had been obtained without a warrant. The judge overruled the objection and allowed the recording to be admitted into evidence. (3/15/2007 Tr. at 37:8-38:9.) Petitioner had an opportunity to litigate his Fourth Amendment claims in the trial court.

13

Moreover, Petitioner presented both of his Fourth Amendment claims to the Michigan Court of Appeals, which addressed and rejected them. *Bridges,* No. 277758, at *4-5. The opportunity to litigate, for purposes of *Stone v. Powell,* encompasses more than an evidentiary hearing in the trial court. It also includes corrective action available through the appellate process on direct review of the conviction. *Cf. Rashad v. Lafler,* 675 F.3d 564, 570 (6th Cir. 2012) (petitioner had ample opportunities in state court to present his Fourth Amendment claims, thus precluding federal habeas relief based on the state court's failure to apply the exclusionary rule; trial court rejected defendant's Fourth Amendment claims on forfeiture grounds because his attorney did not show up at a hearing designed to consider them, and a state appellate court rejected his claims on the merits); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 976 (E.D. Mich. 2004) (petitioner's Fourth Amendment claim was not cognizable on habeas review, even though the petitioner did not challenge the legality of his arrest prior to trial, where the petitioner first raised the issue in a post-trial motion and then on direct appeal and was denied relief). Because all of the material facts were before the state appellate courts on direct review and the appellate process was not otherwise deficient, Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims. Therefore, Petitioner is not entitled to habeas relief for any asserted Fourth Amendment violation.

**D.     Petitioner's Claim Challenging the Sufficiency of the Evidence**

Petitioner claims that his conviction was not supported by sufficient evidence. Specifically, he contends that there was insufficient evidence to convict him of delivery

14

of cocaine, because the marked money used by the confidential informant to purchase the cocaine was never recovered.

A claim that the evidence at trial was insufficient for a conviction is reviewed by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir. 2000) (citing *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789). This standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16, 99 S. Ct. at 2792 n.16. When reviewing such a claim on habeas review, deference is required at two levels: first, to the jury's verdict as contemplated by *Jackson*, and second, to the state court's consideration of the jury's verdict as dictated by AEDPA. *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). The second prong means that a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *Cavazos v. Smith,* 565 U.S. ___, 132 S. Ct. 2, 4 (2011). In other words, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, ___ U.S. ___, 132 S. Ct. 2060, 2065 (2012).

A jury found Petitioner guilty of violating Michigan Compiled Laws § 333.7401(2)(a)(iv), which prohibits persons from "deliver[ing] a controlled substance . . . in an amount less than fifty grams." Under Michigan law, "'[d]eliver' or 'delivery' means the actual, constructive, or attempted transfer from [one] person to another of a controlled substance, whether or not there is an agency relationship." *People v. Schultz,* 246 Mich. App. 695, 703, 635 N.W.2d 491, 497 (2001) (quoting Mich. Comp. Laws § 333.7105(1)). "'*[T]ransfer* is the element which distinguishes delivery from possession.'" *Id.* (citation omitted) (emphasis in original). "'The cases are well settled that the act of transferring a controlled substance is sufficient to sustain a finding of an actual delivery.'" *Id.* (quoting *People v. Maleski*, 220 Mich. App. 518, 522, 560 N.W.2d 71, 74 (1996)). In other words, the exchange of money is not an element of the offense of which Petitioner was convicted.

The state court rejected Petitioner's insufficiency of the evidence claim, noting that "[t]he absence of the marked $50 bills does not prohibit the transaction from being a 'delivery.' According to the law, evidence of a money transaction is not necessary to find delivery." *People v. Bridges*, No. 06-027887, at *3 (Saginaw Cir. Ct. July 21, 2010).

Petitioner argues repeatedly that there was no evidence, direct or circumstantial, connecting him to any criminal act. His argument relies on the fact that the marked bills were never recovered. Because *Jackson* requires reviewing courts to ask whether a rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt and directs courts to apply this standard "with explicit reference" to the elements of the crime as defined by state law, the Court notes that Petitioner's

16

arguments regarding the marked bills are simply irrelevant. *Jackson*, 443 U.S. at 324 n.16, 99 S. Ct. at 2792 n.16; *see also id.* at 319, 99 S. Ct. at 2789).

With respect to the essential elements of the offense, the confidential informant testified that Petitioner gave her a package of cocaine. (3/15/2007 Tr. at 67:4-11.) The confidential informant also testified that she threw the marked money on the floor of Petitioner's vehicle at his request. (*Id.* at 66:25-67:1.) Sergeant Potts testified that the confidential informant had no cocaine in her possession before she met with Petitioner, but did have cocaine after she met with him. (*Id.* at 20:7-21:8.) Potts also testified that the confidential informant did not go anywhere else in the short time after she exited Petitioner's vehicle and returned to his vehicle where she might have purchased cocaine. (*Id.* at 27:2-15.) This evidence was sufficient for a rational trier of fact to conclude that Petitioner had delivered less than fifty grams of cocaine to the confidential informant.

Because the state court rejected Petitioner's sufficiency of the evidence claim in a manner that was not contrary to, or an unreasonable application of, clearly established federal law, Petitioner is not entitled to habeas relief on this ground.

## IV. CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254. Title 28 U.S.C. § 2253 governs appeals in § 2254 proceedings and provides, in pertinent part: "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28

17

U.S.C. § 2253(c)(2). In explaining the meaning of a "substantial showing" necessary to receipt of a certificate of appealability the Supreme Court has indicated:

> ". . . the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further."

*Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 3394 n.4 (1983)(quoting *Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980))(emphasis added and internal citation and quotation marks omitted). More recently, the Supreme Court has explained that when a district court denies a habeas petition on the merits of the claims presented, a certificate may issue if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000). If a petitioner makes the requisite showing and a district court grants a certificate of appealability, the court must indicate the specific issue or issues for which the applicant made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(3).

Because the Court denied all of the claims in Petitioner's petition for habeas corpus, it must make a determination on the certificate of appealability. For the reasons stated in this Opinion and Order, the Court finds that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue in this case. *Steele v. Withrow,* 157 F. Supp. 2d 734, 743 (E.D. Mich. 2001).

18

## V. CONCLUSION AND ORDER

For the reasons stated above, Petitioner's application for writ of habeas corpus is **DENIED** and a certificate of appealability shall not issue.


Dated: February 15, 2013        s/PATRICK J. DUGGAN
                                UNITED STATES DISTRICT JUDGE

Copies to:
**Arthur Bridges**, # 154318
Carson City Correctional Facility
10274 Boyer Road
Carson City, Mi 48811

**Linus R. Banghart-Linn**